THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

PENINSULA II DEVELOPERS, INC., a Florida
Corporation, GRYPHON CONSTRUCTION, LLC, a
Florida limited liability company, and SKYLINE
SYSTEMS, INC., a Florida corporation,

       Plaintiffs,

vs.

WESTCHESTER FIRE INSURANCE COMPANY, a
New York corporation, and LANDMARK
AMERICAN INSURANCE COMPANY, an
Oklahoma corporation,

       Defendants.

_____/

**DEFENDANT WESTCHESTER FIRE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF,
PENINSULA II DEVELOPERS, INC., AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

Defendant, Westchester Fire Insurance Company ("WFIC"), in accordance with Federal

Rules of Civil Procedure 56, and S.D. Fla. LR 7.5, files this motion for summary judgment on

the claims of plaintiff, Peninsula II Developers, Inc. ("Peninsula II"), with an incorporated

memorandum of law, and in support thereof states the following:

<u>**INTRODUCTION AND SUMMARY**</u>

WFIC is entitled to summary judgment on all of Peninsula II's claims for these reasons:

(1)     Peninsula II cannot recover for amounts paid to remediate the units it owned, and

the Court should decline Peninsula II's request for an advisory opinion as to what <u>may</u> be

covered <u>if</u> a judgment is ultimately entered against Gryphon or Skyline at some undetermined

time in the future;

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

(2)      Peninsula II has failed to meet its burden of proving that amounts paid for any particular unit fall within the products-completed operations hazard ("PCOH") exception to WFIC's "Damage to Project or Job Site" exclusion which, on its face, clearly bars coverage for any property damage at the subject condominium location that does not fall within the exception;

(3)      since the general aggregate and extended PCOH limits of the American Home policies have not been exhausted, the underlying coverage has not been exhausted, even if one assumes that a single PCOH limit has been properly exhausted, which WFIC disputes; and

(4)      there is no coverage for approximately $2,864,508 which, by the admission of Peninsula II's corporate designee, are defense costs which WFIC is not obligated to pay.

## FACTUAL BACKGROUND

The relevant facts are detailed in the accompanying Statement of Material Facts as required by Local Rule 7.5.

## ARGUMENT & AUTHORITIES

I.      **Peninsula II Cannot Recover For Its Own Losses, And The Court Should Decline To Issue An Advisory Opinion About Gryphon And Skyline's Potential Future Liability**

A major portion of Peninsula II's amended complaint concerns Peninsula II's own alleged losses.  Of the 26 paragraphs in the pleading's "Background" section, eight paragraphs[1] expressly address Peninsula II's direct alleged losses, as opposed to liabilities Peninsula II may have to third parties.  In paragraph 16, for example, Peninsula II states that it "suffered damages" because of the Chinese drywall.  Paragraphs 23 and 24 refer to Peninsula II's alleged loss of sales, loss of use, carrying costs and diminished profit on a bulk sale.  Paragraph 27 continues

---

[1]      *See* D.E. 250 at ¶¶ 16, 23-24 and 27-31.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

these references and discusses repairs to units owned by Peninsula II.

> **A.    WFIC's policy is a third-party liability policy, not a first-party property policy**

WFIC's policy is an excess liability policy, not a first-party property policy. The policy, attached as Exhibit 1 to Peninsula II's amended complaint,[2] has an insuring agreement that states that WFIC will "pay on behalf of the insured" (not "to" the insured) the "amount of loss which exceeds the amount of loss payable by [American Home]."[3]  The policy also states at amended Condition C that an actual payment, judgment or settlement is necessary before WFIC can have a duty to indemnify.[4]  Just as important, there is no insuring agreement for property damage to Peninsula II's own property, and Peninsula II has not asserted the contrary in its amended complaint.

---

[2]    D.E. 250-1.  The policy is also attached to WFIC's Statement of Material Facts ("SOMF") as Exhibit 11.

[3]    *See* D.E. 250-1 (and SOMF Exhibit 11) at pdf page 2.  Further, the American Home policies to which WFIC's policy follows form state in their insuring agreement that American Home will "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." *See* SOMF Exhibit 12 at pdf page 5; SOMF Exhibit 13 at pdf page 3; and SOMF Exhibit 14 at pdf page 10.

[4]    D.E. 250-1 (and SOMF Exhibit 11) at WFIC-CLMF00273.  In addition, the American Home policies to which WFIC's policy follows form state in condition 3 that "[n]o person or organization has a right under this Coverage Part [to sue American Home] unless all of [the policy] terms have been fully complied with," and that a person may sue American Home to recover on "an agreed settlement or on a final judgment against an insured."  The same condition defines an "agreed settlement" as "a settlement and release of liability signed by [American Home], the insured and the claimant or the claimant's legal representative."  See SOMF Exhibit 12 at AH-C000015; SOMF Exhibit 3 at AH-C000072-73; and SOMF Exhibit 14 at AH-C000139-140.  American Home's Exclusion j(1) excludes "'property damage' to . . . property you own, rent or occupy."  See SOMF Exhibit 12 at AH-C000008; SOMF Exhibit 6 at AH-C000067; and SOMF Exhibit 14 at AH-C000134.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

### B. Peninsula II Lacks Standing To Pursue The Indemnity, If Any, Owed To Gryphon, And Skyline As There Is No Direct Action Statute In California Or Florida

Peninsula II has tried to finesse its direct losses as the liability of other insureds, namely Gryphon and Skyline.  Specifically, in paragraphs 30 and 31, Peninsula II alleges that "Gryphon and Skyline are liable for the acts, failures to act and negligence of manufacturers, suppliers and distributors of the Chinese drywall," and that "Gryphon and Skyline have coverage under the [WFIC] polic[y] for all or nearly all of the damages sought by Peninsula II."[5]  The problem with that approach is that Peninsula II, in its capacity as an active claimant against Gryphon and Skyline, has no standing to pursue any coverage rights against WFIC belonging to Gryphon or Skyline as a matter of law in both California[6] and Florida.[7]

---

[5]    D.E. 250 at ¶¶ 30-31.

[6]    *McKee v. National Union Fire Ins. Co. of Pittsburgh PA*, 15 Cal. App. 4th 282, 285-87 (Ct. App. 2d Dist. 1993) (a third-party claimant has no enforceable interest in an insured's liability insurance until there is a final judgment after all appeals are concluded or the time for appeal has expired); *Coleman v. Gulf Ins. Group*, 41 Cal. 3d 782, 794 (1986) (a third-party claimant has no enforceable rights with respect to an insured's rights under a liability insurance policy); *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976) (same).

[7]    FLA. STAT. § 627.4136(1) & (2); *Colony Ins. Co. v. Total Contracting & Roofing, Inc.*, No. 10-23091-CIV, 2010 WL 5093663, *2 (S.D. Fla., Dec. 8, 2010) (Seitz, J.) (dismissing a counterclaimn filed by third-party claimants in an insurer-initiated declaratory judgment action arising out of underlying defective drywall-related litigation because "this statute requires the Smiths to obtain a settlement or verdict against [the insured] before they can bring an action against [the insurer]."); *see also VanBibber v. Hartford Accident and Indem. Ins. Co.*, 439 So. 2d 880, 882-83 (Fla. 1983) (holding that section 627.4136, which embodies the legislature's intent "that an injured party has no beneficial interest in a liability policy until that person has first obtained a judgment against an insured," is "substantive"); *Hazen v. Allstate Ins. Co.*, 952 So. 2d 531, 540 (Fla. 2d DCA 2007) (affirming dismissal of accident victim's purported direct action against other vehicle owner's liability insurer for noncompliance with nonjoinder statute); *Allstate Ins. Co. v. Stanley*, 282 F. Supp. 2d 1342, 1344 (M.D. Fla. 2003) ("Pursuant to section 627.4136(1), defendants cannot sue Allstate for a declaratory judgment until the defendants have obtained a settlement or judgment in the underlying state court actions against the insured").

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

**C.    Gryphon And Skyline Have No Present Liability To Peninsula II, And Their Future Liability Is Very Doubtful Or Limited**

The grounds already stated above suffice to entitle WFIC to summary judgment on Peninsula II's claims for its own losses.  WFIC will go further, however, and show that the underlying liability of Gryphon and Skyline to Peninsula II that predicates Peninsula II's coverage claim does not even exist.  There is no present liability, as there is no underlying judgment or settlement, and even a future liability is very doubtful or limited.

While an insured's **future**, underlying *non*liability seems beyond the scope of proper consideration in a coverage lawsuit, it is but the flipside of the underlying *liability* that Peninsula II has asked the Court to assume as it seeks to enforce Gryphon and Skyline's purported indemnity rights on their behalf.  If it is proper for the Court to assume that Gryphon and Skyline are liable to Peninsula II despite the absence of an underlying judgment or settlement (and it is not), then it is equally proper for the Court to consider the opposite assumption, and, more importantly, the evidence that actually defeats the supposed liability.

That evidence is ample, as Gryphon and Skyline have strong defenses against any claim by Peninsula II.  Those defenses (with related authorities and evidentiary citations) are set out in detail in WFIC's separate, contemporaneously filed motions for summary judgment against Gryphon and Skyline, which WFIC hereby incorporates by reference, the same as if set out verbatim.  For ease of reference, the defenses include the following:

- Section 4.3.2 of the main construction contract (requiring 21 days' notice to the architect of a claim);

- Section 4.4 of the main construction contract (calls for the architect to resolve claims in the first instance, and makes the architect's decision a condition precedent to litigation);

- The limited scope of the warranty obligation in the main construction contract, Section 3.5.1 ("free from defects not inherent in the quality

5

required or permitted"), combined with the fact that Peninsula II permitted the use of Chinese drywall through its duly authorized representatives, and the findings by courts in Florida and Louisiana that Chinese drywall is functionally non-defective as drywall;

- Section 4.3.4 of the main construction contract, which contemplates adjustments in the contract sum for concealed or unknown conditions, combined with the latency of the off-gassing problem in Chinese drywall;

- Section 4.3.10 of the main construction contract, in which the parties mutually waived claims for consequential damages;

- The construction contracts' insurance procurement and waiver of subrogation clauses, including Section 11.4.1 of the main contract conditions and Sections Y.5 and Y.14 of the addendum to the main contract, through which the contracting parties (i) assigned certain risks to builder's risk and property insurance, thereby (by operation of law) releasing each other from the same risks, and (ii) expressly stated that "[t]he OCIP General Liability policy shall not provide coverage for any claim that could be covered under a property policy or builder's risk policy."

- The limited scope of Gryphon's contractual indemnity clause ("…injury to or destruction of tangible property (other than the Work itself)….") and the broad scope of the "Work" definition in the same contract ("The 'Work' is Peninsula II (Phase 2), a 29 story condominium Tower….");

- The Skyline subcontract's incorporation by reference of the main contract, inclusive of the provisions cited above;

- The contractual ("…$1,000,000 . . . per occurrence . . .") and statutory (Fla. Stat. § 725.06 ("… reasonable commercial relationship to the contract…")) monetary limitations on Skyline's indemnity obligation;

- The payment of all or substantially all (as attested to by Diane Martinez) of Peninsula II's expenses by Gryphon's subcontractor default insurer, Steadfast, and Steadfast's inability to subrogate against its own insured (Gryphon), which together entitle Gryphon to a collateral source offset for Steadfast's payments under Fla. Stat. § 768.76 and effectively preclude any liability of Gryphon to Peninsula II; and

- The absence of a duty to inspect a product or material for a latent defect unless the product or material is inherently dangerous, and the rulings by relevant authorities that Chinese drywall is not inherently dangerous.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

Some of these defenses have been advanced by Skyline in a pending motion to dismiss[8] in the underlying lawsuit.[9]

Since the claims by Peninsula II against Skyline and Gryphon and these defenses, among others, are the subject of an active lawsuit currently pending in Miami-Dade County, Florida, the Court should (1) decline to presume that liability to Peninsula II exists and (2) not issue an advisory opinion about whether WFIC would owe coverage for any potential liability, if it is later found to exist.[10]

**II.    Peninsula II has failed to meet its burden of proving that amounts paid for any particular unit fall within the PCOH exception to the "Damage to Project or Job Site" exclusion which, on its face, clearly bars coverage for any property damage at the subject condominium building that does not fall within the exception.**

**A.    The PCOH Exception to the Damage to Project or Job Site Exclusion**

WFIC's Damage to Project or Job Site Exclusion states as follows:

> THIS POLICY DOES NOT COVER "PROPERTY DAMAGE" TO REAL OR PERSONAL PROPERTY WHICH IS LOCATED IN OR ON ANY PROJECT OR JOB SITE TO WHICH THIS INSURANCE APPLIES.
>
> "PROPERTY DAMAGE" MEANS PROPERTY DAMAGE AS

---

[8]    SOMF Exhibit 41.

[9]    SOMF Exhibit 39.

[10]    *See International Ship Repair & Marine Services, Inc. v. Northern Assur. Co. of Am.*, No. 8:10–CV–2049–T–26-AEP, 2011 WL 5877505, *5 (M.D. Fla., Nov. 23, 2011) ("With respect to the second affirmative defense ['that findings in a suit pending in the Eastern District of Virginia regarding misrepresentations made by ATI would be binding on ISR in this action'], the Court finds that resolving it requires an advisory opinion at this juncture based on the pendency of a lawsuit that has not yet been concluded."); *Nationwide Mut. Co. v. Ft. Myers Total Rehab Center, Inc.*, 657 F. Supp. 2d 1279, 1292 (M.D. Fla. 2009) ("Florida courts will not render, in the form of a declaratory judgment, what amounts to an advisory opinion at the instance of parties who show merely the possibility of legal injury on the basis of a hypothetical state of facts which have not arisen and are only contingent, uncertain, [and] rest in the future.") (citing *Florida Dep't of Ins. v. Guarantee Trust Life Ins. Co.*, 812 So. 2d 459, 460-61 (Fla. 1st DCA 2002)).

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

DEFINED IN THE [AMERICAN HOME POLICY].[11]

THIS EXCLUSION DOES NOT APPLY TO THE "PRODUCT-COMPLETED OPERATIONS HAZARD" AS DEFINED IN THE [AMERICAN HOME POLICY].[12]

The WFIC policy, therefore, does not cover property damage at the condominium complex unless the property damage falls within the PCOH exception.

California, like Florida,[13] employs a shifting burden of proof in coverage disputes. Specifically, "[t]he burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded."[14] Once the insurer proves that the specific exclusion applies, the insured "should bear the burden of

---

[11]     The American Home policies define "property damage" as:

     a.     Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     b.     Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

SOMF Exhibit 12 at 19; SOMF Exhibit 13 at 15; and SOMF Exhibit 14 at 22.

[12]     D.E. 250-1 (and SOMF Exhibit 11) at pdf page 27.

[13]     *See East Florida Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. App. 2005) ("The burden is on the insured to prove that the insurance policy covers a claim against it. Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion applies to the coverage. If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion.") (citing *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.*, 768 F. Supp. 1542, 1545 (M.D. Fla. 1991) and *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997)); *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 925 (11th Cir. 1998) ("Florida law is clear that once the insured establishes a loss apparently within the terms of an insurance policy, the burden shifts to the insurer to prove that the loss arose from a cause which is excepted by the policy.") (citing *Hudson v. Prudential Property & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984)).

[14]     *Aydin Corp. v. First State Ins. Co.*, 959 P.2d 1213, 1215 (Cal. 1998).

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

establishing the exception because 'its effect is to reinstate coverage that the exclusionary language otherwise bars.'"[15]

WFIC has sustained its burden of proving that the exclusion applies since it bars coverage for "property damage to real property" (e.g., corroded piping and HVAC units) at a covered project or job site (no one disputes that the Peninsula II site was covered). Despite its burden of proof, Peninsula II has failed to submit competent summary judgment proof that the amounts it is seeking from WFIC fall within the PCOH exception.[16]

The threshold requirement for property damage to fall within the PCOH is that the property damage occur "away from premises you own or rent."[17] This requirement is not met since Peninsula II has no evidence that property damage[18] caused by off-gassing from Chinese drywall "first commenced"[19] after title to the units began transferring in August 2007 as

---

[15]     *Id.*; *see also* CALIFORNIA CIVIL JURY INSTRUCTIONS No. 2304, *Exception to Insurance Policy Exclusion – Burden of Proof* (Sept. 2003) ("[Name of plaintiff] claims that [his/her/its] [liability/loss] is covered under an exception to a specific coverage exclusion under the policy. To establish this coverage, [name of plaintiff] must prove that [his/her/its] [liability/loss] [arises out of/is based on/occurred because] [state exception to policy exclusion].") (brackets in original), *available at* www.justia.com/trials-litigation/docs/caci/2300/2304.html.

[16]     D.E. 250.

[17]     SOMF Exhibit 12 at 19; SOMF Exhibit 13 at 15; and SOMF Exhibit 14 at 22.

[18]     *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 662-66 (1995) (following continuous trigger theory under which property damage is deemed to commence upon initial exposure to the harmful condition and continue through manifestation of injury).

[19]     SOMF Exhibit 12 at 45 ("In the event of continuing or progressive . . . 'property damage' over any length of time, such . . . 'property damage' shall be deemed to be one 'occurrence,' and shall be deemed to occur only when such . . . 'property damage' first commenced."); SOMF Exhibit 13 at 41 (same); and SOMF Exhibit 14 at 48 (same); *Bayley Construction v. American Guarantee and Liability Ins. Co.*, No. C09-166RAJ, 2010 WL 4272454, at *3 (W.D. Wash., Oct. 15, 2010) ("The fact that the damage was ongoing and continued into the National Union policy period does not change the fact that it started before the National Union policy period. Because the National Union policy specifies that ongoing and continues property damage is considered to be one "occurrence" on the date of its first inception, and the first inception of the water intrusion

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

established by the declaration of Ms. Martinez.[20] Indeed, Peninsula II's corporate representative, Jeff Ramos, could not specify the timing of the commencement of drywall off-gassing or of resulting corrosion at his deposition despite being designated on the topic of property damage's timing.[21]

**B.     Exhaustion Of Underlying Policy Periods**

The American Home settlement agreement only purported to exhaust a single PCOH limit,[22] and that is a proposition not binding on the Court or WFIC.  Even if one assumes that a single PCOH limit has been properly exhausted, however, WFIC's policy is not yet implicated because there are no additional PCOH-related costs in the same period, and the other aggregates of the American Home policies have not even been touched, much less exhausted.

Condition C of WFIC's policy states that WFIC's liability "*with respect to any one occurrence* shall not attach unless and until the insured, or the insured's underlying insurer, has paid the amount of underlying insurance stated in Declarations 5";[23] Item 5 of the Declarations refers to a schedule of underlying insurance;[24] and that schedule specifies "each occurrence," "general aggregate" and PCOH aggregate limits.[25]  The above-highlighted language makes clear that the exhaustion of American Home's underlying limits is to be analyzed by occurrence and,

---

here was before 2004, the "occurrence" of property damage caused by water intrusion took place before the earliest National Union policy period. Thus, no National Union policy covers the Bayley loss.").

[20]     SOMF Exhibit 27 at 2.

[21]     SOMF Exhibit 1 at 50:13 to 52:13.

[22]     Peninsula II filed this agreement under seal at D.E. 200-14 (see pp. 4-5).

[23]     SOMF Exhibit 11 at pdf page 2 (emphasis added).

[24]     *Id.* at pdf page 8.

[25]     *Id.* at pdf page 10.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

thus, a single occurrence's exhaustion of one American Home aggregate has no effect on any other American Home aggregate.[26]

Titles to the units did not begin transferring until August 2007,[27] which was after the end (May 15, 2007) of the 2006-07 policy period whose standard PCOH aggregate limit the American Home settlement purported to exhaust. Skyline, the party on whose behalf American Home purported to pay the settlement money, has no established liability, and only limited and doubtful future liability, as explained above.

This means that there is no PCOH coverage in the 2006-07 period for anything Peninsula II has paid (recall that Peninsula II is the only insured who has paid any amount for which it seeks indemnity[28]) since Peninsula II still owned all units during the 2006-07 policy period as established by the declaration of Ms. Martinez. Consequently, the following limits remain available:

| AVAILABLE | AVAILABLE | AVAILABLE | Purportedly exhausted, but no additional costs allocable directly above here to implicate WFIC layer | AVAILABLE | AVAILABLE | AVAILABLE |
|---|---|---|---|---|---|---|
| *Gen'l* | *PCOH* | *Gen'l* | *PCOH* | *Gen'l* | *PCOH* | *Extended PCOH* |
| **2005-06** | | **2006-07** | | **2007-08** | | **→ Within and beyond policy periods (5 years) →** |

Significantly, neither the American Home settlement agreement nor anything Peninsula II has submitted shows what units are subsumed by the $4 million payment and therefore fall within the 2006-07 PCOH aggregate and not in one of the six available limits charted above.

---

[26]   The manner of exhaustion is explained in greater detail by WFIC's underwriter, William Schmaltz, in his affidavit. *See* SOMF Exhibit 45.

[27]   SOMF Exhibit 27 at 2.

[28]   SOMF at 1.

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

Peninsula II's most recent complaint and submission of proof include alleged damages for *all* of the units impacted by Chinese drywall. If, in fact, the PCOH limit was exhausted for the 2006-2007 policy, then what units were remediated for that amount? This proof is essential for the Court and WFIC to determine what remains at issue in this case and then to determine whether damage to a particular unit falls within the only exception to the project and job site exclusion.

WFIC believes that there are multiple occurrences. American Home's Condition 11, which contains an amended "occurrence" definition, states: "With respect to any alleged defects and deficiencies in buildings or real property, this Endorsement applies separately to each alleged defect or deficiency."[29] As for what constitutes "each alleged defect or deficiency," the phrase should be construed in a manner consistent with the policy as a whole.  In that regard, the Completed Operations Extension endorsement to American Home's policy states that "Completed Operations Coverage is extended . . . for a period of 5 years . . . .  The Extended Completed Operations Period will commence when that portion of the project is put to its intended use, or a temporary or permanent certificate of occupancy is issued."[30]

Certificates of occupancy were issued on a unit-by-unit basis since the units are separately owned, even though the certificates as a practical matter may be grouped as sets of units become complete.[31]  The policy, therefore, effectively commences extended completed operations coverage on a unit-by-unit basis.  Thus, the damage within each unit should be deemed a separate defect or deficiency from the damage in other units.  Peninsula II has no

---

[29]   See Exhibit 12 at 45; Exhibit 13 at 41; and Exhibit 14 at 48.

[30]   Exhibit 12 at 48; Exhibit 13 at 44; and Exhibit 14 at 51. (emphasis added).

[31]   SOMF at ¶ 10.

summary judgment proof to establish which of the multiple occurrences are allocable to a particular policy period or aggregate.

Therefore, even if one accepts that the 2006-07 policy period's standard PCOH aggregate limit has been exhausted by American Home's $4 million payment, there is no proof to establish which units fall under that exhausted aggregate and should now be out of consideration in Peninsula II's remaining coverage claim against WFIC. Moreover, as to the units that do properly remain, Peninsula II has not identified when property damage first commenced, so it is impossible to determine which period is triggered or which aggregate is in play.

Another way for the Court to approach this issue in its ruling is from the standpoint of what would be owed by WFIC above the allegedly exhausted PCOH limit. The WFIC policy's insuring agreement states that WFIC will "pay on behalf of the insured for that amount of loss which exceeds the amount of loss payable by Underlying Insurance,"[32] and amended Condition C, as quoted earlier, determines exhaustion of underlying insurance by occurrence.[33] Given the PCOH definition, the only damages that could go into WFIC's layer directly above American Home's 2006-07 PCOH aggregate are damages for Skyline's alleged liability since title did not transfer until after that policy expired.

The Court should not, and, in fact, cannot, determine the amount of those damages because: (1) to do so would impermissibly require the Court to conclude that Skyline is liable which, for reasons already argued, is premature; and (2) Peninsula II has not identified which units were remediated by the $4,000,000 payment or, more importantly, which units remain, much less when property damage first commenced. The Court cannot properly accept Peninsula

---

[32]    SOMF Exhibit 11 at pdf page 2.

[33]    *Id.*

II's implicit invitation to assume exhaustion based on Skyline's liability to Peninsula II, especially since Skyline has strong defenses (as outlined in WFIC's separate motion against Skyline) and has filed its own motion to dismiss in state court.

## III.   No Duty to Defend or Reimburse Defense Costs

Peninsula II has conceded in its supplemental interrogatory answers that it is not owed defense costs, at least at present.[34]   The parties disagree, however, about the scope of the defense cost category.

Peninsula II conceded in the same supplemental interrogatory answer that money paid to the following consultants fall within the defense cost category: "ATC Associates, Inc., Applied Technical Services, Inc., Delta Consulting Group, Inc., Environ, Sage Ventures, Weber Shandwick, Angelo & Banta, Carlton Fields, and Daniels Kashtan Downs."[35]   Peninsula II's listing of firms should also include Matco Services, Inc. ("Matco"), SDM Consulting ("SDM") and Wiss, Janney, Elstner Associates, Inc. ("WJE"), as the work performed by these firms is likewise investigative[36] or defense oriented in nature.   In this regard, Peninsula II's Rule 30(b)(6) designee, Jeff Ramos, testified as follows:

---

[34]   SOMF at ¶ 59 and SOMF Exhibit 21.

[35]   SOMF at ¶ 59 and SOMF Exhibit 21.

[36]   The American Home policies refer to investigative costs as among the costs American Home will pay, outside of limits, when defending or investigating a claim.  See SOMF Exhibits 12 at 11, SOMF Exhibit 13 at 9 and SOMF Exhibit 14 at 16.  *See also Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th 38, 58-59 (1997) ("Standard comprehensive or commercial general liability insurance policies also provide that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for a covered claim.  By definition, the duty entails the rendering of a service, viz., the mounting and funding of a defense, which is not limited, expressly or otherwise, in order to avoid or at least minimize liability.  As such, it requires the undertaking of reasonable and necessary efforts for that purpose, including *investigation*.   It also requires the incurring of reasonable and necessary costs to that end, including *investigative* expenses.") (emphasis added; citations omitted).

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

Q.      [O]ne of the areas in the deposition notice asks for Peninsula II's position about the amount of defense costs that have been incurred.

                          * * *

        When you hear that term "defense cost," what in your mind goes into that category?

A.      Attorney fees, legal fees relating to our activities in -- in the project.

Q.      All right.  How about the cost of investigating the problem?

A.      Yes, that would be included as well.

                          * * *

Q.      All right.  Now -- and I take it from your answer, and correct me if I'm wrong, that you believe there are other defense costs perhaps in the nature of investigation that are included within one of these other categories.  Is that a fair assumption on my part?

A.      Yes.

                          * * *

Q.      Did you have any consultants assist in determining where Chinese drywall was located?

A.      Yes, we did.

Q.      Who were those?

A.      Those consultants were Wiss Janney and Matco.

                          * * *

Q.      Their -- how would you describe their tasks?

A.      We were trying to get an understanding of the problem within the building, so we brought them on to help us in understanding what the issues were.

Q.      All right.

        Part of your investigation was to identify which units had Chinese drywall, correct?

A.      Yes.

Q.      All right.  And Wiss Janney and Matco had a role in that, correct?

A.      I believe so, yes.

                          * * *

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

Q.     What did SDN[37] do?

A.     SDN was responsible for testing the integrity of the electrical wires within the units.

Q.     Was that also part of the investigation to determine where there had been an impact?

A.     Yes.[38]

The reports from these firms are consistent with the foregoing testimony, as explained in the Statement of Facts above.  The total expenses incurred by all of these firms (both those listed by Peninsula II and the three firms just mentioned) totaled $2,864,508 at the time of the Veritas Advisory Group report.[39]  WFIC asks the Court to rule that this entire amount is not covered under its policy.  In the alternative, if the costs are not defense costs, then they are subsumed by the other categories of damages addressed in this motion and are not covered for the same reasons.

## IV.    Peninsula II's Breach of Contract Claim Fails With the Other Claims

Peninsula II recently added a cause of action for breach of contract against WFIC for the first time.[40]  The Court should render summary judgment upon this claim for the same reasons stated above, given that the claims concern or are derivative of the same alleged actual damages and suffer from the same defects.

## <u>CONCLUSION AND PRAYER</u>

For the reasons set out above, Peninsula II's claims are premature and lack substantive

---

[37]     Transcription error in each instance.  Should be SDM.

[38]     SOMF Exhibit 1, Excerpts from the Deposition of Jeff Ramos dated April 8, 2011 at 14-22.]

[39]     SOMF Exhibit 47 at 19.

[40]     D.E. 250 at ¶¶ 40-56.  The Court struck Peninsula II's other new claim, for bad faith, by order dated November 23, 2011 [D.E. 273].

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

merit, and WFIC is entitled to summary judgment on the claims as a matter of law.

WHEREFORE, WFIC respectfully asks the Court to grant it summary judgment on all of Peninsula II's claims.

Respectfully submitted,

/s/ Anaysa Gallardo
Anaysa Gallardo, Esq.
Florida Bar No. 0707635
Cozen O'Connor
Southeast Financial Center, Suite 4410
200 S. Biscayne Boulevard
Miami, FL 33131-4332
Tel:    305/704-5940
Fax:    305/704-5955
agallardo@cozen.com

AND

Joseph A. Ziemianski (Admitted *Pro Hac Vice*)
Texas Bar No. 00797732
Bryan P. Vezey (Admitted *Pro Hac Vice*)
Texas Bar No. 00788583
Cozen O'Connor
1221 McKinney Street, Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Telecopier: (832) 214-3905

ATTORNEYS FOR DEFENDANT,
WESTCHESTER FIRE INSURANCE COMPANY

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of January, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either *via* transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Anaysa Gallardo*

CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

# THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 09-CIV-23691-SEITZ-SIMONTON

### SERVICE LIST

James W. Carpenter, Esq.
jwc@angelolaw.com
Eric C. Edison, Esq.
ece@angelolaw.com
ANGELO & BANTA, P.A.
SunTrust Center, Suite 850
515 East Las Olas Blvd.
Fort Lauderdale, FL 33301
Tel:  954-766-9930
Fax:  954-766-9937
*Attorneys for Plaintiff – Peninsula II Developers, Inc.*

Benjamin Lawrence Bedard
Roberts Reynolds Bedard & Tuzzio
470 Columbia Drive, Building C-101
West Palm Beach, FL 33409-0709
561-688-6560
Fax: 688-2343
bbedard@rrbpa.com
*Attorneys for Defendant - Landmark American Insurance Co.*

Eric Corey Edison
Angelo & Banta, P.A.
SunTrust Center
515 East Las Olas Boulevard, Suite 850
Fort Lauderdale, FL 33301 954-766-9930
Fax: 954-766-9937
eric.edison@gmail.com
*Attorneys for Plaintiff - Peninsula II Developers, Inc*

Timothy S. Taylor
VEZINA, LAWRENCE & PISCITELLI, P.A.
121 Alhambra Plaza, Suite 1604
Coral Gables, FL 33134
Telephone: (305) 443-2043
Telecopier: (305) 443-2048
ttaylor@vlplaw.com
*Attorney for Plaintiff - Gryphon Construction, LLC*

Sandra Denise Kennedy
Ferencik Libanoff Brandt Bustamante
        & Williams
150 S Pine Island Road, Suite 400
Fort Lauderdale, FL 33324
954-474-8080
Fax: 474-7373
skennedy@flbbwlaw.com
*Attorneys for Plaintiff - Skyline Systems, Inc.*

COZEN O'CONNOR
200 South Biscayne Boulevard, Suite 4410, Miami, Florida 33131 – Telephone 305-704-5940 – Facsimile 305-704-5955