# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23691-CIV-SEITZ

PENINSULA II DEVELOPERS, INC., ET AL.,

    Plaintiffs,

v.

WESTCHESTER FIRE INSURANCE CO.,

    Defendant.
_____/

## ORDER GRANTING WESTCHESTER'S MOTION FOR SUMMARY JUDGMENT AND DENYING GRYPHON'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the cross motions for summary judgment of Westchester Fire Insurance Company [DE 471] and Plaintiff Gryphon Construction, LLC [DE 475]. This suit arose out of the installation of Chinese drywall in a condominium project developed by now-dismissed Plaintiff Peninsula II Developers, Inc. ("Peninsula"). Gryphon Construction, LLC ("Gryphon") was the general contractor for the project. Defendant Westchester Fire Insurance Co. ("Westchester") issued an excess liability insurance policy under an owner controlled insurance program for the project, under which Gryphon is an insured. Gryphon's amended complaint alleges claims for declaratory judgment and breach of contract based on Westchester's failure to indemnify certain expenses Gryphon incurred and also seeks Gryphon's attorneys' fees.

Having reviewed the parties' papers and the record, the Court grants Westchester's motion and denies Gryphon's. Gryphon is not entitled to its attorneys' fees and because Florida's confession of judgment doctrine does not apply to the circumstances of this case. Under California law, Westchester's policy does not give rise to an indemnity obligation for the

particular damages Gryphon seeks. Therefore, Westchester is entitled to summary judgment.

## I. MATERIAL FACTS

The construction of a 223-unit luxury condominium in Aventura, Florida called the Peninsula II Condominium (the "Project") led to this case. The developer of the Project, Peninsula entered into an agreement for the construction of the Project with a contractor, Plaintiff Gryphon. Gryphon, in turn, entered into a subcontract with Plaintiff Skyline Systems, Inc. ("Skyline") to supply and install drywall in the units and common areas of the Project.

*The Insurance Policies*

To insure the Project, Peninsula set up an owner controlled insurance program ("OCIP"). Under the Peninsula OCIP, American Home Assurance Company ("American Home") issued three primary commercial general liability policies for the construction of the Project for consecutive terms lasting between May 15, 2005 and March 30, 2008. Peninsula is listed as the "named insured" on the first page of each of the policies, but on the "Name Insured Endorsement" pages, Gryphon and Skyline, as contractors and subcontractors, are also identified as insureds. (DE 473-1 at 49.) The American Home policy contains the following "Insuring Agreement:"

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> * * *
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under [other sections of this policy].

(DE 473-1 at 11.)

Westchester provided excess liability insurance coverage for the Project. (DE 473-2.)

2

Westchester's policy contains the following three pertinent provisions:

Insuring Agreement

To pay on behalf of the "Insured" for that amount of loss which exceeds the amount of loss payable by "Underlying Insurance" described in the Declarations, but the Company's obligation hereunder shall not exceed the limit of liability stated in Declaration 6.

(*Id.* at 3 (capitalization altered).) Following that language is the following:

Condition C, Loss Payable, Is Amended As Follows:

Liability of the Company with respect to any one occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, has paid the amount of underlying insurance stated in Declarations 5. If the Company is obligated to indemnify the Insured, the Insured must make a definite claim for loss within twelve (12) months after the Insured has paid any amount of excess loss, as stated in Declaration 6; or after the Insured's liability shall have been made certain by final judgment or by written agreement of the Insured, the Claimant, and the Company. Any subsequent payments made by the Insured on account of the same occurrence shall be payable by the Company within thirty (30) days after additional claim is made by the Insured, and after the Insured has shown proof in conformity with this policy.

(*Id.* at 3 (capitalization altered).) Finally, the Westchester policy contains language stating that it follows form to the underlying American Home policy:

Application of Underlying Insurance. Except as otherwise stated herein, and except with respect to (1) any obligation to investigate or defend any claim or suit, or (2) any obligation to renew, the insurance afforded by this policy shall apply in like manner as the underlying insurance described in the Declarations.

(*Id.* at 22.)

*The Litigation*[1]

Skyline installed Chinese drywall at the Project with the approval of Peninsula and Gryphon. At the time of the installation, no one knew that the Chinese drywall was defective.

---

[1]This action and the related state court actions have a lengthy history. The Court will only include the information relevant to the pending motions.

Starting in February 2009, Gryphon began receiving complaints from unit owners related to the use and installation of the Chinese drywall. On February 23, 2009, Gryphon received claims pursuant to Chapter 558, Florida Statutes from some unit owners related to the use and installation of the Chinese drywall. (DE 473 at ¶22.) On April 20, 2009, Peninsula served Gryphon's counsel with additional 558 Claims. (*Id.* at ¶25.) Gryphon provided Westchester with timely notice of the complaints and the 558 Claims and demanded that Westchester provide Gryphon with a defense and indemnity. (*Id.* at ¶¶26-27.) At that time, Westchester did not provide a defense or indemnification to Gryphon.

In December 2009, this action began with American Home seeking a declaratory judgment as to its obligation to defend and indemnify Peninsula, Gryphon, and Skyline for claims arising from the installation of Chinese drywall. (DE 1). Peninsula, Gryphon, and Skyline filed counterclaims against American Home and filed Third-Party Complaints against Westchester seeking a judgment declaring that Westchester owed a duty to indemnify under its policy with respect to the lawsuits and claims involving Chinese drywall.

In May 2011, Peninsula sued Gryphon and Skyline in Miami-Dade County Circuit Court for claims related to the use and installation of Chinese drywall in the Project. In June 2011, American Home entered into a settlement agreement with Peninsula, Gryphon, Skyline, and others and paid out its policy limits. After that, Westchester provided a defense to Gryphon and Skyline in the state court case. Ultimately, a state court judgment was entered against Gryphon and Skyline. Thereafter, Westchester negotiated a reduced amount to satisfy the judgment and paid the lower negotiated amount, thereby satisfying the judgment against Skyline and Gryphon. As a result, Peninsula dismissed its claims against Westchester in the instant action.

After American Home settled, the remaining parties filed amended pleadings in the instant action, which reconfigured their positions in this litigation. Peninsula, Gryphon, and Skyline became Plaintiffs and Westchester became the Defendant.[2] Subsequently, this Court stayed the instant action pending the resolution of the state court proceedings. (DE 352). After the resolution of the state court proceedings and the lifting of the stay, the parties again filed amended pleadings in this case. Gryphon filed a two count amended complaint for declaratory judgment and breach of contract.

*Gryphon's Claims*

After the complaints and 558 Claims were filed in 2009, Gryphon, Peninsula, and Steadfast Insurance Company ("Steadfast"), which provided Gryphon with a subcontractor default insurance policy, undertook a program to investigate and remediate the Chinese drywall and the damages it had caused. (DE 473 at ¶45.) As a result, Gryphon had to pay $1 million dollars of its own money in order to trigger Steadfast's policy obligations. (*Id.* at ¶¶46, 49.) Of that $1 million dollars, Gryphon maintains a portion, $381,490.04, should have been covered under Westchester's policy because the $381,490.04 represents sums that Gryphon became legally obligated to pay as a result of the 558 Claims. (*Id.* at ¶¶49, 52.) However, the $381,490.04 was not paid as the result of any court order or as the result of a settlement of which Westchester was a part. Gryphon now seeks to recover the $381,490.04 from Westchester. Gryphon also seeks its attorneys' fees from Westchester, although it is not clear what specific

---

[2]The claims against a second Defendant, Landmark American Insurance Company, a second excess carrier, were dismissed in 2014. (DE 395).

attorneys' fees Gryphon seeks to recover.[3]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

---

[3]Gryphon could be seeking its fees related to the instant action, the resolution of the 558 Claims, the state court action, or any combination thereof.

## III. DISCUSSION

Westchester's motion argues that the damages Gryphon seeks are not covered by the policy, the damages are insufficiently documented, and Gryphon is not entitled to an award of attorneys' fees. On the other hand, Gryphon maintains that it is entitled to summary judgment on the attorneys' fee issue because Westchester's settlement and payment of Peninsula's state court judgment against Gryphon amounts to a confession of judgment. Gryphon also seeks to recover the $381,490.04 it paid maintaining these are damages covered by Westchester's policy.

### A. Gryphon is Not Entitled to its Attorneys' Fees Under the Confession of Judgment Doctrine

Gryphon seeks its attorneys' fees pursuant to Florida's confession of judgment doctrine, under which an insured is entitled to its fees if the insurer wrongfully denies coverage forcing the insured to sue and then the insurer has a change of heart.[4] Gryphon filed its initial third-party complaint against Westchester in the instant action on May 18, 2010, just less than one week before Peninsula filed its state court action against Gryphon for claims related to the installation of Chinese drywall at the Project. Gryphon's original third-party complaint sought a declaration that Westchester, and other insurers, owed Gryphon a duty to "indemnify . . . with respect to claims and suits made against Gryphon related to the installation and use of Chinese Drywall in the Project." (DE 78 at ¶29.) Because Westchester ultimately settled and paid the judgment Peninsula obtained against Gryphon in the state court law suit, Gryphon maintains it is entitled to its attorneys' fees under the confession of judgment doctrine.

---

[4]Westchester argues, among other things, that California, not Florida, law should apply because the Court previously held that California law applies to the interpretation of the policy. (DE 115.) California does not have a similar doctrine. However, because the Court finds that Gryphon is not entitled to attorneys' fees under Florida law, the Court need not address which state's law applies.

7

Under Florida's confession of judgment doctrine, "it is well settled that the payment of a previously denied claim following the initiation of an action for recovery, but prior to the issuance of a final judgment, constitutes the functional equivalent of a confession of judgment." *Johnson v. Omega Insurance Co.*, 200 So. 3d 1207, 1215 (Fla. 2016) (and cases cited therein). Under such circumstances, an insured is entitled to recover its attorneys' fees pursuant to Florida Statute, section 627.428. This doctrine has been extended beyond just the circumstances of a suit between an insured and an insurer to include circumstances where the insurer settles the third-party suit and then voluntarily dismisses its related complaint for declaratory judgment. *W & J Group Enterprises, Inc. v. Houston Specialty Insurance Co.*, 684 Fed. App'x 867, 869 (11th Cir. 2017) (and cases cited therein). Under such circumstances the settlement of the third-party claim and the dismissal of the insurer's declaratory judgment action together constitute a confession of judgment sufficient to trigger an award of attorneys' fees. *Id.* This is so because the provision of the defense and payment of the judgment or settlement in the third-party claim is precisely what the insured sought and what the insurer contended the insured was not entitled to in the declaratory action. *O'Malley v. Nationwide Mutual Fire Insurance Co.*, 890 So. 2d 1163, 1164 (Fla. 4th DCA 2004).

Based on this doctrine, Westchester maintains that Gryphon cannot recover fees for three reasons: (1) Gryphon sued Westchester for declaratory judgment, not vice versa, and Gryphon did so prematurely; (2) Westchester defended Gryphon in the underlying litigation under a reservation of rights and has now settled the matter; and (3) Gryphon was not a real party in interest in the underlying litigation due to its prior release by contract. As explained below, Westchester is correct that the confession of judgment doctrine does not apply in this case.

Westchester argues that the only cases that have allowed recovery of fees when the underlying litigation was a third-party suit involved circumstances where the insurer brought the related declaratory judgment action, not the insured. In this case, Gryphon, not Westchester filed the instant declaratory judgment action. Thus, Westchester maintains that the confession of judgment doctrine does not apply here. Westchester further argues that the confession of judgment doctrine does not apply here because Gryphon filed its declaratory judgment action prematurely, as evidenced by this Court's stay of this case pending the outcome in the state court litigation.

In response, Gryphon cites to a single case where a court applied the doctrine and granted attorneys' fees when the insured brought the declaratory judgment action, *Ottaviano v. Nautilus Insurance Co.*, 660 F. Supp. 2d 1315 (M.D. Fla. 2009). In *Ottaviano* the insurer raised similar arguments to those raised by Westchester, which the court rejected. *Id.* The *Ottaviano* court noted that the issue for consideration was whether the insurer took a firm position that coverage was not afforded thereby creating a real and present dispute between the insurer and insured. *Id.* at 1321. Thus, the court found that once the insurer took a firm position that there was no coverage a bona fide dispute existed between the parties when the plaintiff filed the declaratory judgment action. *Id.* However, unlike in *Ottaviano* where the insurer clearly stated in writing, multiple times, that there was no coverage for the claim, here Gryphon has presented no record evidence that Westchester had outright denied Gryphon's claim at the time Gryphon filed the instant action. Here, there are no written rejections of coverage, as in *Ottaviano*, nor any other record evidence that Westchester plainly told Gryphon that its policy did not cover Peninsula's third-party claims based on Chinese drywall issues. Furthermore, at the time the instant action

9

was filed, there was no pending state court suit for which Westchester owed a duty to defend. In fact, after the third-party suit was filed, Westchester did exactly what its policy required – Westchester provided Gryphon with a defense and indemnified Gryphon for the settlement of the judgment. Consequently, unlike in *Ottaviano*, there was no bona fide dispute at the time Gryphon filed this action for declaratory relief.

Further, other courts that have considered this issue have found that public policy favors not awarding attorneys' fees in such situations. The court in *Basik Exports & Imports, Inc. v. Preferred National Insurance Co.*, 911 So. 2d 291, 294 (Fla. 4th DCA 2005), explained:

> Public policy also suggests that attorney's fees should not be awarded in this case. The purpose behind section 627.428, Florida Statutes, "is to discourage insurers from contesting valid claims and to reimburse successful policy holders forced to sue to enforce their policies." *Danis Indus. Corp. v. Ground Improvement Techniques*, 645 So. 2d 420, 421 (Fla. 1994) (emphasis added); *see also Pepper's Steel Alloys, Inc. v. U.S.*, 850 So. 2d 462, 465 (Fla. 2003). This valid purpose would be frustrated by extending the "confession of judgment" fiction in this case.
>
> Here, the insured was not "forced to sue" the insurer to be provided a defense. In fact, the insurer appropriately provided the insured with a defense under a reservation of rights, pursuant to section 627.426(2), Florida Statutes (2004). The insurer settled the claim on behalf of the insured within its policy limits, thereby protecting the insured from financial exposure. When it did so, the coverage issue became moot as the trial court found.
>
> If the insured is awarded attorney's fees under the facts of this case, insurers will be discouraged from settling third-party claims they defend under a reservation of rights for settlement will subject them to paying attorney's fees for an unnecessary declaratory judgment action filed by the insured. It would also encourage insureds to rush to the courthouse to file a declaratory judgment action, even while being defended by the insurer, to secure attorney's fees under section 627.428. And, it may adversely affect insurers from defending under a reservation of rights. All of these outcomes will undoubtedly continue to increase the burden on the judicial system.

*See also Canal Insurance Co. v. SP Transport, Inc.*, 272 Fed. App'x 825, 828 (11th Cir. 2008).

Given the policy behind the limitation on Florida's confession of judgment doctrine,

10

Gryphon is not entitled to its attorneys' fees. Gryphon has not shown that Westchester clearly denied its claim. In fact, Westchester provided a defense and indemnity in the third-party state court lawsuit. Gryphon has simply not provided any record evidence to establish that Westchester would not have done this absent the filing of the instant action. Thus, the circumstances in this case raise the very issues the *Basik* court was concerned about if the confession of judgment doctrine applied in situations where the insured, not the insurer, files the declaratory judgment action. Because Gryphon has not presented record evidence that Westchester had denied all coverage of the claims against Gryphon for the use of Chinese drywall before Gryphon filed the instant declaratory judgment action, Gryphon has not met its burden to establish that it is entitled to attorneys' fees.

**B.     Westchester's Policy Does Not Cover the Damages Gryphon Seeks**

Westchester's opposition to Gryphon's damages claim rests on Westchester's policy language. Specifically, Westchester asserts that, under the policy language and the applicable California law, the phrase "legally obligated to pay as damages" in an insurance agreement requires a court ordered money judgment to create an indemnity obligation. Gryphon counters by citing to a different clause in the policy and argues that the policy creates an indemnity obligation when one of three events occurs: (1) "the insured has paid any amount of excess loss" or (2) "after the insured's liability shall have been made certain by final judgment" or (3) "by written agreement of the insured, the claimant, and the company." Thus, the issue is a matter of contract interpretation.

The California Supreme Court has held that an "insurer's duty to indemnify the insured for 'all sums that the insured becomes legally obligated to pay as damages' under the standard

comprehensive general liability insurance policy is limited to money ordered by a court." *Certain Underwriters at Lloyd's of London v. Superior Court of Los Angeles County*, 16 P.3d 94, 103 (Cal. 2001). The reason, in part, is that "within the legal and broader culture, 'harm' exists traditionally outside of court, whereas 'damages' exist traditionally inside of court." *County of San Diego v. Ace Property & Casualty Insurance Co.*, 118 P.3d 607, 614 (Cal. 2005) (internal quotations and citations omitted). Thus, the use of the term "damages" acts as a limitation on the type of sums that the insurer is legally obligated to pay. *Certain Underwriters*, 16 P.3d at 105. The California Supreme Court later applied the same definition of "damages" to the same policy language in an excess insurance policy. *County of San Diego*, 118 P.3d 607. The court in *County of San Diego* did, however, note that an insuring agreement could contain broader language that would not limit the insurer's indemnity obligation to only money ordered by a court. *Id.* at 614-16. However, the use of the term "damages" in an insuring agreement "precludes a finding that a broad right to indemnification *outside the context of a lawsuit* was intended under the policy language." *Id.* at 614 (emphasis in original).[5]

---

[5]Gryphon relies on *Powerine Oil Co. v. Superior Court*, 118 P.3d 589 (Cal. 2005), for the proposition that an excess insurance policy is generally broader than a standard insurance policy. However, *Powerine* is inapposite. In *Powerine*, the language in the excess policy at issue was substantially broader than the standard "legally obligated to pay as damages" phrase, at issue here. The insuring language in the *Powerine* policy stated that the insurance company's indemnification obligation arose from "damages, direct or consequential and expenses, all as more fully defined by the term 'ultimate net loss,'" which was defined in the policy as "the total sum which the Insured . . . become obligated to pay . . . either through adjudication or compromise, and shall also include . . . all sums paid . . . for litigation, settlement, adjustment and investigation of claims and suits." *Id.* at 601. Westchester's policy does not contain such broad insuring language. Further, the other cases Gryphon cites in support of its argument that it damages are covered under Westchester's policy do not deal with the interpretation of the language at issue in this case; instead the cases deal with preventative or mitigating costs, as opposed to remedial costs. For example, in *State v. Allstate Insurance Co.*, 201 P.3d 1147, 1160 (Cal. 2009), the court did not address the meaning of the "legally obligated to pay as damages"

12

Given California law, the issue before this Court is which language constitutes the insuring agreement in Westchester's policy. As previously noted, each side relies on different language as the insuring language. In *County of San Diego*, the California Supreme Court set out the rules for contract interpretation:

> While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. . . . If contractual language is clear and explicit it governs. . . . Language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.

118 P.3d at 612 (internal quotations and citations omitted). Applying these rules of interpretation to the policies at issue, Westchester is correct – the insuring language is limited to "those sums that the insured becomes legally obligated to pay as damages."

The Westchester policy explicitly states it applies in like manner as the American Home policy. The American Home policy states that it "will pay those sums that the insured becomes legally obligated to pay as damages." The American Home policy does not include any other language that would expand its coverage beyond "those sums that the insured becomes legally obligated to pay as damages." As set out above, under California law, that phrase limits coverage to money ordered by a court. Contrary to Gryphon's assertions, the Westchester policy is not broader than the American Home policy. Not only does the Westchester policy state that it applies in like manner to the American Home policy, it also states that it will "pay on behalf of

---

language; instead, it addressed whether measures taken to prevent or mitigate a covered injury could be covered by a policy. This is not what happened in the instant case. Here, the harm that was the basis of the 558 Claims had already occurred. Thus, the costs here were for investigation and remediation of the Chinese drywall and not for a preventative or mitigating act to lessen damages which Westchester was already obligated to indemnify. Accordingly, these cases are not applicable in the instant matter.

the 'Insured' for that amount of loss which exceeds the amount of *loss payable by* [the American Home policy]." Based on the language of the policy and California law, the only loss payable under the terms of the American Home policy is money ordered by a court. Consequently, Westchester's policy language limits its insuring obligations to that which is covered by the American Home policy – money ordered by a court.

While Gryphon argues that the Westchester policy language also creates an indemnity obligation when "the insured has paid any amount of excess loss" or "by written agreement of the insured, the claimant, and the company,"[6] Gryphon fails to read this section of Westchester's policy in context. As set out above, contract language must be read in context which means that the language Gryphon relies upon must be read in relation to the entire sentence, and provision, in which it appears. The compete sentence reads: "*If the Company is obligated to indemnify the Insured*, the Insured must make a definite claim for loss within twelve (12) months after the Insured has paid any amount of excess loss, as stated in Declaration 6; or after the Insured's liability shall have been made certain by final judgment or by written agreement of the Insured, the Claimant, and the Company." (emphasis added.) Contrary to Gryphon's assertions, this provision does not state that Westchester is obligated to indemnify Gryphon if any of the listed events occur. Instead, the provision states that if Westchester is obligated to indemnify Gryphon,

---

[6]Gryphon also points out that Westchester previously argued that "actual payment, a judgment or a settlement is necessary before [Westchester] can have a duty to indemnify." *See* DE 283 at 2. While the Court understands how Gryphon could misconstrue Westchester's prior statement, Westchester did not argue that payment, settlement, or a judgment creates a duty to indemnify; it stated that those occurrences "*can*" give rise to a duty to indemnify. Furthermore, even if Westchester misrepresented or incorrectly interpreted its policy language earlier in this case, the Court must apply the law to the terms of the insurance policy as written, regardless of the parties' representations as to the meaning of the policy's terms.

14

Gryphon must make a claim within a certain amount of time of the listed events occurring. Thus, this is not an insuring provision, it is a notice provision. While California recognizes that an insurance contract can include coverage broader than "those sums that the insured becomes legally obligated to pay as damages," there is nothing in the language of either the Westchester or American Home policies that would expand coverage beyond money ordered paid by a court. There is no record evidence that the $381,490.04 that Gryphon seeks was ever the subject of a court judgment. Consequently, the damages Gryphon seeks are not covered by Westchester's policy.

Accordingly, it is

ORDERED that:

1. Westchester's Motion for Summary Judgment Against Gryphon [DE 471] is GRANTED.

2. Plaintiff Gryphon Construction, LLC's Motion for Final Summary Judgment Against Defendant Westchester Fire Insurance Company [DE 475] is DENIED.

3. The Court will enter a separate judgment.

DONE AND ORDERED in Miami, Florida, this 25 day of April, 2018.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record