UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23691-CIV-SEITZ

PENINSULA II DEVELOPERS, INC., ET AL.,

        Plaintiffs,

v.

WESTCHESTER FIRE INSURANCE CO.,

        Defendant.
_____/

## ORDER GRANTING WESTCHESTER'S MOTION FOR SUMMARY JUDGMENT AND DENYING SKYLINE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER is before the Court on Westchester's Motion for Summary Judgment Against Skyline [DE 469] and Skyline's Motion for Partial Summary Judgment on Bad Faith and Breach of Contract [DE 476]. This action arises out of the installation of Chinese drywall in a condominium project developed by now-dismissed Plaintiff Peninsula II Developers, Inc. (Peninsula). Skyline Systems, Inc. (Skyline) was the subcontractor that installed the Chinese drywall. Defendant Westchester Fire Insurance Co. (Westchester) issued an excess liability insurance policy under an owner controlled insurance program for the condominium project, under which Skyline is an insured. Skyline's amended complaint alleges claims for declaratory judgment, breach of contract, and bad faith. Both sides now seek summary judgment. Because Skyline has failed to establish that Westchester has a duty to indemnify Skyline for the damages which it seeks in this action, Westchester is entitled to summary judgment.

## I. MATERIAL FACTS

This case arises out of the construction of a 223-unit luxury condominium in Aventura, Florida called the Peninsula II Condominium (the "Project"). The developer of the Project,

Peninsula entered into an agreement for the construction of the Project with a contractor, Gryphon Construction, LLC ("Gryphon"), the other remaining Plaintiff. Gryphon, in turn, entered into a subcontract with Skyline to supply and install drywall in the units and common areas of the Project.

*The Insurance Policies*

To insure the Project, Peninsula set up an owner controlled insurance program ("OCIP"). Under the Peninsula OCIP, American Home Assurance Company ("American Home") issued three primary commercial general liability policies for the construction of the Project for consecutive terms lasting between May 15, 2005 and March 30, 2008. Peninsula is listed as the "named insured" on the first page of each of the policies, but on the "Name Insured Endorsement" pages, Gryphon and Skyline, as contractors and subcontractors, are also identified as insureds. (DE 473-1 at 49.)[1] The American Home policy contains the following "Insuring Agreement:"

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> * * *
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under [other sections of this policy].

(DE 473-1 at 11.)

Westchester provided excess liability insurance coverage for the Project. (DE 473-2.) Westchester's policy contains the following three relevant provisions:

---

[1] Apparently, neither party felt it necessary to file the insurance policies as part of this summary judgment record. Therefore, the citations to the policies are to documents filed by Gryphon in relation to its summary judgment motion.

2

Insuring Agreement

> To pay on behalf of the "Insured" for that amount of loss which exceeds the amount of loss payable by "Underlying Insurance" described in the Declarations, but the Company's obligation hereunder shall not exceed the limit of liability stated in Declaration 6.

(*Id.* at 3 (capitalization altered).) Following that language is the following:

> Condition C, Loss Payable, Is Amended As Follows:
>
> Liability of the Company with respect to any one occurrence shall not attach unless and until the Insured, or the Insured's underlying insurer, has paid the amount of underlying insurance stated in Declarations 5. If the Company is obligated to indemnify the Insured, the Insured must make a definite claim for loss within twelve (12) months after the Insured has paid any amount of excess loss, as stated in Declaration 6; or after the Insured's liability shall have been made certain by final judgment or by written agreement of the Insured, the Claimant, and the Company. Any subsequent payments made by the Insured on account of the same occurrence shall be payable by the Company within thirty (30) days after additional claim is made by the Insured, and after the Insured has shown proof in conformity with this policy.

(*Id.* at 3 (capitalization altered).) Finally, the Westchester policy contains language stating that it follows form to the underlying American Home policy:

> Application of Underlying Insurance. Except as otherwise stated herein, and except with respect to (1) any obligation to investigate or defend any claim or sit, or (2) any obligation to renew, the insurance afforded by this policy shall apply in like manner as the underlying insurance described in the Declarations.

(*Id.* at 22.)

*The Litigation*[2]

Skyline installed Chinese drywall at the Project with the approval of Peninsula and Gryphon. At the time of the installation, no one knew or should have known that the drywall was defective. In 2009 American Home began this action by seeking a declaratory judgment as

---

[2]This action and the related state court actions have a lengthy history. The Court will only include the information relevant to the pending motions.

3

to its obligations under its policies to defend and indemnify Peninsula, Gryphon, and Skyline for claims arising from the installation of Chinese drywall. (DE 1). Peninsula, Gryphon and Skyline filed counterclaims against American Home and filed Third-Party Complaints against Westchester seeking a judgment declaring that Westchester owed a duty to indemnify under its policy with respect to the lawsuits and claims involving Chinese drywall.

In May 2011, Peninsula filed suit against Gryphon and Skyline in Miami-Dade County Circuit Court for claims related to the use and installation of Chinese drywall in the Project. In June 2011, American Home entered into a settlement agreement and release with Peninsula, Gryphon, Skyline, and others and paid out its policy limits ("June 2011 Settlement Agreement"). After execution of the June 2011 Settlement Agreement, Westchester provided a defense to Skyline and Gryphon in the state court case. Ultimately, judgment was entered against Gryphon and Skyline. In December 2013, Peninsula and Steadfast Insurance Company filed a second state court action against Skyline. Westchester again provided Skyline with a defense. Judgment was entered against Skyline in that case, as well. Thereafter, Westchester negotiated a settlement of both state court judgments against Skyline and paid the negotiated settlement amount. As a result, Peninsula dismissed its claims against Westchester in the instant action.

Following the June 2011 Settlement Agreement, the remaining parties filed amended pleadings in this litigation, which reconfigured their positions. Peninsula, Gryphon, and Skyline became Plaintiffs and Westchester became the Defendant.[3] Subsequently, this Court stayed the instant action pending the resolution of the state court proceedings. (DE 352). After the

---

[3]The claims against a second Defendant, Landmark American Insurance Company, a second excess carrier, were dismissed in 2014. (DE 395).

resolution of the state court proceedings and the lifting of the stay, the parties again filed amended pleadings in this case. Skyline filed a three count amended complaint, seeking a declaratory judgment and alleging claims for breach of contract and bad faith. (DE 450).

*The June 2011 Settlement Agreement*

American Home, Peninsula, Gryphon, Skyline, and others executed the June 2011 Settlement Agreement,[4] under which American Home agreed to pay Peninsula $1.6 million for defense costs incurred through June 2, 2011, and to pay the policy limit of $4 million to Peninsula. (DE 209-2). The $4 million was to be paid out over the course of several months, with the last payment being made on August 3, 2011. (*Id.*). The $4 million was paid to Peninsula "on behalf of Skyline in settlement of certain claims asserted by Peninsula arising from the existence of Chinese Drywall." (*Id.*)

As part of the June 2011 Settlement Agreement, Skyline agreed to "discharge Peninsula and Gryphon and their . . . insurers . . . from any and all known and unknown claims . . . including, without limitation any claims for retainage, contract balance or other payments of any and all kinds." (*Id.*). In return, Peninsula covenanted "not to execute or enforce any judgment for damage to property related to or arising from Chinese Drywall . . . against the assets of or accounts receivable of . . . Skyline." (*Id.*) Similarly, in return for the release from Skyline, Gryphon covenanted not to "execute or enforce any judgment for damages, including but not limited to, damages to property related to or arising from Chinese Drywall . . . against the assets or accounts receivable of Skyline." (*Id.*) In the June 2011 Settlement Agreement, the parties also state that "Peninsula, Gryphon and Skyline do not release or waive ant claims of any nature

---

[4]Westchester is not a party to the June 2011 Settlement Agreement.

5

against Westchester." (*Id.*)

*Skyline's Damages*

Skyline's most recent amended complaint is not clear regarding the damages sought. Therefore, the Court ordered Skyline to provide a statement of claim of its damages. (DE 457). In response to the Court's order, Skyline provided Westchester with the following statement of damages:

> Skyline's damages consist of its final contract balances, including time and material invoices and completed change proposals.
>
> Skyline and its counsel were in the process of scheduling a meeting with Gryphon to discuss and cause Gryphon to issue final payment of Skyline's contract balance and amounts due on time and material invoices and change proposals, in performance of its subcontract for drywall and stucco on the [Project], when notification came the first week of February, 2009, that Chinese drywall had been discovered on the property. The meeting was not held, and Skyline's payment was retained indefinitely as a result of the pending Chinese drywall damages. The amounts pending payment to Skyline at that time were as follows: a contract balance of $1,256,106.85, which includes change proposals (Gryphon had previously approved for payment $824,284.93, which amount did not include completed change proposals); Time and materials invoices in the amount of $1,905,449.32 (Gryphon had calculated the amount to be $1,765,327.29).
>
> Skyline has limited its lost profits claim to the above amounts that were lost on the [Project] as a result of Westchester's failure to indemnify Skyline, Gryphon and Peninsula . . . pursuant to Westchester holding the second layer of insurance coverage under the owner-controlled insurance policy for the project.
>
> * * *
>
> As a result, Skyline seeks payment of its lost profits on the [Project], as defined above. Except for the above, Skyline does not seek the payment of lost profits generally or on other projects.

(DE 470-1).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. DISCUSSION

In its motion, Westchester raises four main reasons that it is entitled to summary judgment: (1) Skyline cannot bring suit against Westchester in Westchester's capacity as

7

Peninsula's and Gryphon's insurer;[5] (2) Westchester does not owe Skyline indemnity for Skyline's release of its contract balances; (3) Westchester was not and could not have been the cause of Skyline giving up its contract balance claim; and (4) Skyline cannot state a claim for bad faith. Skyline's motion states that it seeks summary judgment on its breach of contract claim and its bad faith claim but also seems to be seeking summary judgment on the declaratory judgment claim. Because Westchester does not owe Skyline indemnity for the damages Skyline seeks, Westchester is entitled to summary judgment on all counts.

### A. Westchester Does Not Owe Skyline a Duty to Indemnify for the Damages Skyline Seeks

Westchester's contention that it has no duty to indemnify Skyline for its unpaid contract balance and unpaid labor and materials has two parts. First, Westchester argues that the release in the June 2011 Settlement Agreement was not part of a settlement that disposed of any of Skyline's liability. Second, Westchester asserts that the unpaid contract balance and unpaid labor and materials are not "damages" on account of "property damage," as required under the policy. In response, Skyline argues, without citing any authority, that no coverage issue exists and that Westchester has confessed to coverage by paying Peninsula's claims.

#### i. *The June 2011 Settlement Agreement Did Not Give Rise to an Indemnity Obligation*

Westchester argues that the June 2011 Settlement Agreement did not give rise to an indemnity obligation because it did not actually release any of Skyline's liability. As part of the June 2011 Settlement Agreement, Skyline released Gryphon and Peninsula from any claims

---

[5]This argument is moot because Skyline explicitly states that it has not sued Westchester in its capacity as Peninsula's and Gryphon's insurer but has sued Westchester in its capacity as Skyline's insurer.

Skyline had for retainage, contract balances, or other payments of any and all kinds. In return, Skyline received from Gryphon and Peninsula covenants not to enforce any judgment for property damage resulting from Chinese drywall against the assets of Skyline. Westchester maintains that it owes Skyline no indemnity for these released monies (which are the only damages sought by Skyline) because the release was not part of a settlement that actually disposed of any of Skyline's liability. Thus, because Skyline released its claim to the unpaid monies, but remained liable for the damages related to the use and installation of the Chinese drywall, Westchester did not, and does not, have an obligation to indemnify Skyline for those released amounts.[6]

Westchester contends that its indemnity obligation does not attach until either a settlement is entered into or a judgment against Skyline is obtained. Once judgments were actually obtained against Skyline in the state court suits, Westchester fulfilled its indemnity obligation by settling the state court judgments and paying the negotiated settlement amount. Had Skyline obtained a partial liability release in return for the released monies, Westchester could have used that liability release to lessen its liability in the state court suits. Skyline, however, only received a covenant not to enforce a judgment from Gryphon and Peninsula. Such a covenant had no effect on Westchester's potential liability. Consequently, Westchester maintains that it is entitled to summary judgment, having fulfilled its contractual duties.

---

[6]Implicit in Westchester's argument is an admission that had the June 2011 Settlement Agreement released some of Skyline's liability to Peninsula and Gryphon, Westchester would have an indemnity obligation because it would have reduced the amount of Westchester's liability in the state court actions brought by Peninsula.

9

In response, Skyline argues that Westchester relies on Florida law, not California law,[7] and that Westchester's arguments are based on the idea that the June 2011 Settlement Agreement contained a covenant not to sue, which it did not. Skyline, however, cites no legal authority in its opposition and makes no argument, other than that Westchester is wrong. While Skyline is correct that it did not receive a covenant not to sue in the June 2011 Settlement Agreement, it did receive covenants not to enforce a judgment from Peninsula and Gryphon. What Skyline clearly did not receive in the June 2011 Settlement Agreement is a release from any liability. Thus, the June 2011 Settlement Agreement, to which Westchester was not a party, was not a settlement of any claims against Skyline. As a result, nothing in the June 2011 Settlement Agreement released any of Skyline's legal liability for installing the defective drywall. Further, Skyline did not release its claim to the monies as a result of any court order. Skyline points to no language in the Westchester policy, or American Home policies, that establishes that Westchester had a duty to indemnify Skyline for the monies it released as part of the June 2011 Settlement Agreement. Consequently, Westchester is not liable for the released monies sought by Skyline.

### ii. *Skyline Has Not Established that the Damages it Seeks Are Covered "Damages" Under the Terms of the Westchester Policy*

While Skyline argues that Westchester has failed to indemnify it, it has not pointed to any language in the Westchester policy that would create an indemnification obligation for the damages it seeks. Westchester, on the other hand, argues that under the policy language, Westchester has no indemnity obligation for the specific damages Skyline now seeks. Because Westchester did indemnify Skyline for the state court judgments, the only issue is whether

---

[7]By prior order, this Court determined that California law governs the interpretation of the policies. (DE 115).

Westchester also owes a duty to indemnify Skyline for the unpaid contract balance and unpaid labor and materials balance that Skyline now seeks as damages.

As discussed in more detail in the Court's order addressing the cross-motions for summary judgment related to Gryphon's claims [DE 500 at 11-13], pursuant to California law, Westchester's indemnify obligations arise only upon the entry of a court order. Under California law, an "insurer's duty to indemnify the insured for 'all sums that the insured becomes legally obligated to pay as damages' . . . is limited to money ordered by a court." *Certain Underwriters at Lloyd's of London v. Superior Court of Los Angeles County*, 16 P.3d 94, 103 (Cal. 2001); *County of San Diego v. Ace Property & Casualty Insurance Co.*, 118 P.3d 607 (Cal. 2005). The use of the term "damages" acts as a limitation on the type of sums that the insurer is legally obligated to pay. *Certain Underwriters*, 16 P.3d at 105. While an insuring agreement can contain broader language that would not limit the insurer's indemnity obligation to only money ordered by a court, the use of the term "damages" in an insuring agreement "precludes a finding that a broad right to indemnification *outside the context of a lawsuit* was intended under the policy language." *County of San Diego* 118 P.3d at 614 (emphasis in original).

The Westchester policy explicitly states it applies in like manner as the American Home policy. The American Home policy states that it "will pay those sums that the insured becomes legally obligated to pay as damages." The American Home policy does not include any other language that would expand its coverage beyond "those sums that the insured becomes legally obligated to pay as damages." As set out above, under California law, that phrase limits coverage to money ordered by a court. Not only does the Westchester policy state that it applies in like manner to the American Home policy, it also states that it will "pay on behalf of the

'Insured' for that amount of loss which exceeds the amount of *loss payable by* [the American Home policy]." Based on the language of the policy and California law, the only loss payable under the terms of the American Home policy is money ordered by a court. Consequently, Westchester's policy language limits its insuring obligations to that which is covered by the American Home policy – money ordered by a court.

The June 2011 Settlement Agreement is not a court order and Skyline fails to point to any language in the insurance policies that extends coverage beyond money ordered by a court.[8] Consequently, under California law, the June 2011 Settlement Agreement did not give rise to an indemnity obligation by Westchester. Furthermore, prior to the exhaustion of American Home's policy limit, Westchester, as an excess insurer, had no obligations under its policy. Only after American Home paid its policy limit did Westchester have any obligations. At that point, Westchester stepped in to defend and indemnify Skyline in the state court actions. Thus, because Westchester's policy was not implicated prior to American Home making its required payments under the June 2011 Settlement Agreement and because, after American Home made those payments and exhausted its policy limits, Westchester stepped in and defended and indemnified Skyline in the state court action, Westchester complied with its indemnity obligations under its policy.

Skyline also argues, without citing any facts or authority, that Westchester confessed to coverage by paying Peninsula's claims. However, as explained in detail in the Court's order addressing the cross-motions for summary judgment related to Gryphon's claims [DE 500 at 8-10],

---

[8]Notably, the June 2011 Settlement Agreement did not actually resolve or release any of Skyline's liability; something a court judgment would have done.

12

Westchester's settlement and payment of the state court judgments against Gryphon and Skyline does not amount to a confession of judgment. Accordingly, Skyline has failed to show how Westchester is liable for the unpaid contract balance and unpaid time and materials balance that Skyline seeks as damages in the instant case. Consequently, Westchester is entitled to summary judgment on Skyline's breach of contract and declaratory judgment claims.

B.  **Westchester is Entitled to Summary Judgment on Skyline's Bad Faith Claim**

Finally, Westchester argues that it is entitled to summary judgment on Skyline's bad faith claim because there can be no bad faith when there is no insurance coverage. This is the case under both Florida and California law.[9] *See Blanchard v. State Farm Mutual Automobile Insurance Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("an insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith . . . can accrue."); *Kransco v. American Empire Surplus Lines Insurance Co.*, 2 P.3d 1, 14 (Cal. 2000) ("Of course, without coverage there can be no liability for bad faith on the part of the insurer."). In its statement of damages Skyline provided to Westchester by Court order, Skyline seeks only its unpaid contract balance and its unpaid labor and materials balance. As set out above, there is no coverage for these damages under Westchester's policy. As a result, Skyline's bad faith claim must be dismissed.[10] Accordingly, it

---

[9] The Court has not made a determination as to whether Florida or California law would apply to Skyline's bad faith claim.

[10] While there is no legal basis for Skyline's bad faith claim, there is no question that Westchester did nothing to help expedite the resolution of the claims arising out of the use of Chinese drywall at the Project. Had Westchester been more proactive in recognizing its obligations and in helping the parties resolve the issues, this case and the related state court proceedings could have been resolved far more quickly, thereby saving this Court, the state courts, and the parties time and resources.

is

ORDERED that:

1. Westchester's Motion for Summary Judgment Against Skyline [DE 469] is GRANTED.

2. Skyline's Motion for Partial Summary Judgment on Bad Faith and Breach of Contract [DE 476] is DENIED.

3. The Court will enter a separate judgment.

4. All pending motions are DENIED as moot.

5. This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 25 day of April, 2018.

*[signature]*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All counsel of record